## Samuel C. Postlewait v. L. L. Higby.

1. BURDEN OF PROOF—*On Affirmative and Negative Questions.*—One who asserts a fact necessary to establish a claim or a defense, must prove it. In the great majority of cases it will be found that the fact to be proved is affirmative in form, and whoever asserts a claim or a defense which depends upon a negative must, as in other cases, establish the truth of the negative by a preponderance of evidence.

2. SAME—*Affirmative of the Issue.*—The affirmative of the issue is with him who affirms or asserts a matter in support of his claim or defense, regardless of whether he affirms or asserts the affirmative or negative of the question at issue.

3. SAME—Where a party litigant claims that his adversary has no such arrangement as he relies upon and so insists as matter of defense, it is incumbent on him to prove his claim.

4. SAME—*Rests Throughout upon the Party Asserting the Affirmative of the Issue.*—Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case

progresses, while the burden of proof, meaning the obligation to establish the truth of the claim, rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation upon the whole case, he fails. This burden of proof never shifts during the course of a trial, but remains with him to the end.

**Assumpsit,** on a contract. Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1898. Affirmed. Opinion filed June 22, 1899.

**Statement by the Court.**—This was an action of assumpsit on a contract, which, with the indorsements thereon, was put in evidence, and is as follows:

" No. 11,248.                                                    $420.

CHICAGO, ILL., 6–20, 1892.

The Unique Printing Co. is hereby requested to publish our card, to occupy ⅓ square on 5000 ' Rules, Regulations and Law Banners,' for one year's use in thirty hotels (same rate for fewer) of this city, the same to be of satin, with orna mental trimmings (style of sample displayed) for which we promise to pay the bearer the sum of four hundred twenty dollars—$35 upon producing the receipts showing the delivery of the banners as herein described—$35 the 1st of each mo. thereafter till paid. All stipulations are detailed in this contract note, and we have received an exact duplicate.

S. C. Postlewait,    name.
Ogden Ave.    street.
Undertaker.    business.

A square is 1 inch deep by 5½ inches wide. Special location of ad. can not be made a part of the contract, and no ad. to occupy more than one square.

Taken by E. L. Peet, representing the Unique Printing Co., Fort Worth, Texas.

Hotel receipts submitted Decr. 10, '92.

S. C. POSTLEWAIT.   (Name.)

ENDORSEMENTS.—Paid o. d. (on delivery) Dec. 10, 1892, $35.00. Paid 2d payment Jan. 30, 1893, $35.00. Paid 3d payment March 18, 1893, $35.00."

The declaration consists of a special count and the common *indebitatus* counts in assumpsit.

In the special count the instrument sued on is declared on as a promissory note, which it clearly is not. The

appellee filed with his declaration an affidavit of claim, claiming on the above quoted instrument, calling it a promissory note and alleging there was due on it a balance of $350.81. Appellant filed a plea of the general issue and an affidavit of merits, and also a notice under the plea which is as follows:

" Notice of special matter under the general issue: That the instrument in writing, a copy of which is filed with the plaintiff's amended declaration, was given upon another and a different consideration than the consideration expressed upon the face of said instrument, and that the said instrument was obtained from the defendant by a certain false and fraudulent representation, to wit, that said Unique Printing Company obtained the making and delivery of said instrument by the defendant, by falsely and fraudulently representing to the defendant that the said Unique Printing Company had, at and before the execution of said instrument, a contract with thirty of the leading hotels of Chicago that they (the said hotels), and each of them, would in case of the death of any person or persons in said hotels, respectively, promptly notify the undertaker whose name should appear on the banners mentioned in said instrument in writing, of the death of any such person or persons dying in said hotels, and, if possible, place the body of any and all such deceased person or persons in the charge and care of the undertaker whose advertisement should appear upon said banners. And that the defendant will give in evidence that said Unique Printing Company had no such contract with said thirty leading hotels, nor with either of them, and that said representation was knowingly false. And the defendant will further give in evidence that the said representations of, and said' alleged contract with, said hotels was the principal and only consideration, except the consideration appearing on the face of said instrument, of the execution and delivery of said instrument, and that the execution and delivery of said instrument by the defendant was obtained by the false and fraudulent representations aforesaid, and is void, and the consideration of said instrument has wholly failed."

The cause, by consent of the parties, was tried by the court without a jury; the court found the issues for the plaintiff, appellee, and assessed the damages at the sum of $391.34, for which sum judgment was rendered. L. L. Higby,

the appellee, did business in the name of the Unique Printing Co. He was the company. There was no incorporated company of that name. The instrument sued on was put in evidence under the common counts, the court having properly ruled that it was inadmissible under the special count.

Brant, attorney for appellee, testified that he called on appellant, presented the written instrument to him, and asked him whether the signature to the instrument and also the signature to the memorandum, "Hotel receipts submitted," etc., were his, and he said they were; that the work had been done and the banner receipts had been submitted to him, but that he would not pay because certain representations had been made to him about contracts which the company had with the hotels which were untrue, and that he had received no benefit from the contract.

Appellant testified that he was an undertaker; that a Mrs. Peet, who was soliciting agent for the company, called on him and solicited his advertisement in the "Rules and Regulations," to be placed inside of hotel room doors, and said to him, "We have an arrangement with thirty leading hotels of Chicago, with one exception, by which they are to call the undertaker whose name appears on these 'Rules and Regulations,' in all cases of death during the year while these hang upon the hotel doors;" that on the strength of that representation, he signed the order; that he made three payments aggregating $105, when, having begun to suspect that something was wrong, he sent two men, one at a time, to investigate, who reported to him, and that after receiving their reports he stopped paying. The witness admitted that he stated to Brant that the signature to the instrument was his, and that the articles had been delivered to the hotels; that Mrs. Peet had satisfied him that they had been delivered some time in 1892. Plattner, formerly in appellant's employ, testified that Mrs. Peet called at appellant's place of business, when appellant was absent, and said to witness that she had an advertising scheme by which she intended to put advertising on the banners to be placed in

thirty leading hotels, with one exception, but that witness knew nothing of what occurred between her and appellant. Appellant proved that the banners were not used at the Briggs House or at the Sherman House, and that neither of said hotels had any contract with the Unique Printing Co. John Mullin, a witness for appellant, testified as follows:

" I am a clerk for Mr. Postlewait; been with him about a year; I have made efforts and inquiry among the hotels in this city to ascertain whether or not the banners mentioned in this instrument were put in the hotels; I was at the Tremont, Sherman, Briggs, Great Northern and Gault House; I ascertained that there was a banner at the Great Northern; it did not bear Mr. Postlewait's name on it; I saw one at the Tremont, but I did not see his name on it; I don't know whether it was on or not; I found none at any of the other hotels; I made inquiry as to whether or not they had made a contract in relation to such banners; they universally said no such contract was made."

There was no evidence that any of the hotels mentioned, except the Briggs House, was a leading hotel.

JONES & LUSK, attorneys for appellant.

HENRY W. BRANT, attorney for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The main contention of appellant's counsel is, that appellant having proved that appellant's solicitor represented to him that appellee had an arrangement with thirty leading hotels in Chicago, as mentioned in the foregoing statement, the burden was on appellee to prove that he had such an arrangement, and not on appellant to prove the contrary, viz., that appellant had no such arrangement; that appellant was not bound to prove a negative. We do not understand that the burden of proof depends upon the form of a proposition, but that the burden is on him asserting the proposition, as a cause of action or as a defense, whether the proposition asserted is affirmative or negative in form. A recent author says:

" It is reasonable that the one who asserts a fact neces-

sary to the claim or defense, should prove such fact, and in the great majority of cases it will be found that the fact to be proved is affirmative in form.    But it is well settled that whoever asserts a claim or a defense which depends upon a negative must, as in other cases, establish the truth of the allegation by a preponderance of evidence." 1 Jones on Evidence, Sec. 178, citing numerous cases in support of the text.

The burden of proof is on him who has the affirmative of the issue, but there is an obvious distinction between the affirmative of the issue and the affirmative of the question. The affirmative of the issue is with him who affirms or asserts a matter in support of his claim or defense, regardless of whether he affirms or asserts the affirmative or negative of the question at issue.

In the present case appellant claims that the alleged representation was false; that appellee had no such arrangement as represented, and he so claims as matter of defense. We think it clearly incumbent on him to prove this claim. He has the affirmative of the issue.

Egbers v. Egbers, 177 Ill. 82, was a bill filed to set aside a will.    One of the allegations was that the supposed testatrix never signed the will; another that she was of unsound mind, mentally incapable of making a will.    The court held that the burden was on the complainant attacking the will to prove these allegations.    The court say:

" Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case progresses, while the burden of proof, meaning the obligation to establish the truth of the claim rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation upon the whole case he fails.    This burden of proof never shifts during the course of a trial, but remains with him to the end."

The notice of special matter contains this :

" The defendant will give in evidence that said Unique Printing Company had no such contract with said thirty leading hotels, nor with either of them," etc.

But counsel contend that slight proof of a negative may be sufficient, if it be within the power of the adverse party

to prove the affirmative, if such proof be possible. This may be conceded, and yet appellant must fail, because he produced substantially no proof whatever of the falsity of the alleged representation. Appellant's testimony was that appellee's solicitor said to him, "We have an arrangement with thirty leading hotels of Chicago," etc.

Now an arrangement may, or not, be a contract; it certainly is not *ex vi termini*. It is obvious, then, that the testimony of some of the witnesses that several hotels had no contract with the appellee is not relevant to the question. The testimony of Mullin that certain parties told him they had no contract with appellant, besides being irrelevant, was mere hearsay, which the trial judge had the right to ignore, and doubtless did ignore. Mer. Des. Trans. Co. v. Joesting, 89 Ill. 152.

It can not be said that it was not in appellant's power to ascertain what, if any, arrangement appellee had with the hotels which received the "Rules, Regulations and Law Banners," had he exercised reasonable diligence. It appears by his own signature on the instrument, that the hotel receipts were submitted to him December 10, 1892, and he admitted to the witness Brant that they were submitted to him. Having the hotel receipts before him, it would have been easy for him to ascertain whether appellee had any, and if so what, arrangement with the hotels. He very frankly says, in his testimony, "I must admit carelessness." By his contract he was not bound to pay anything until the receipts were produced, and the fact that he did pay is itself evidence that they were produced.

Appellant's counsel further contend that the alleged representation of appellee's soliciting agent was part of the consideration for appellant's undertaking, and must be read into the contract. It would follow logically from this proposition, if sound, that it would devolve on appellee to prove the truth of the alleged representation. We can not agree with this contention. Appellee's undertaking and obligation, as shown by the contract, was to publish appellant's card, to occupy one-third square on 5,000 Rules, Regu--

lations and Law Banners for one year's use in thirty hotels, etc., and this undertaking or obligation can not be added to or in any way modified by verbal testimony, under the specious pretense that the undertaking of appellee was the consideration for appellee's promise, and therefore it may be shown that there was another and different consideration. If the contract in question could be so modified, it is difficult, if not impossible, to conceive of any contract in writing which could not be modified in its essential and material terms by parol evidence. The cases cited by appellant's counsel in support of this contention do not support it.

It is contended that the instrument in question was not admissible in evidence under the common counts; also that the court treated as evidence certain receipts produced on the trial and offered, but not admitted in evidence. The contract was proper evidence under the common counts. It appears that the court, during the trial, read a document which, in form, is a receipt, without any signature thereto. The receipts produced are not in the bill of exceptions, which purports to contain all the evidence, which being the case, we do not understand how it can be said that the court treated them as evidence. The mere reading by the court of a document offered in evidence is not error.

We find no reversible error in the record. The judgment is affirmed.