BOARD OF LOCAL IMPROVEMENTS SOUTH PALOS TOWNSHIP SANITARY DISTRICT *ex rel.* NORTH SIDE TRACTOR SALES COMPANY, Plaintiff-Appellee, *v.* ST. PAUL FIRE AND MARINE INSURANCE, Defendant-Appellant.—(GLENVIEW SEWER AND WATER CO., INC., Defendant.)

First District (5th Division)   No. 61555

Opinion filed June 11, 1976.

Herrick, McNeill, McElroy & Peregrine, of Chicago (Ray W. Fick, Jr., and Michael J. Hamblet, of counsel), for appellant.

John M. Kaveny, of Chicago, for appellee.

Mr. JUSTICE BARRETT delivered the opinion of the court:

North Side Tractor Sales Co. (North Side) brought this action against St. Paul Fire and Marine Insurance (St. Paul) and Glenview Sewer and Water Co., Inc. (Glenview), upon a payment performance bond issued by them. North Side sought recovery for the rental of a heavy construction machine used in the completion of Glenview's contract with the Board of Local Improvements of South Palos Township Sanitary District (the Board). The trial court, sitting without a jury, determined as a matter of fact "that the equipment was rented, not purchased" and as a matter of law "that rental of equipment for the job in question is covered under this bond." Therefore, judgment was entered against Glenview and St. Paul in the amount of $7,500 and costs. From this judgment St. Paul appeals.

On May 11, 1971, Glenview entered into a contract with the Board to construct a sanitary sewer system. The Board was bound by statute to require its contractor to furnish a bond with sufficient sureties to assure payment to those who supplied material used and labor performed in the completion of the contract. (Ill. Rev. Stat. 1973, ch. 29, par. 15.) In order to comply with this requirement, on May 11, 1971, defendant, St. Paul, as surety and Glenview as principal issued a bond in favor of the Board. The bond was apparently drawn by the Board and stated in pertinent part:

> "* * * [St. Paul] shall promptly make payment to all persons, firms, sub-contractors, and corporations furnishing materials for or performing labor in the prosecution of the work provided for in such contract, and any authorized extension or modification thereof, including all amounts due for materials, lubricants, oil, gasoline, coal and coke, repairs on machinery, equipment, and

tools, consumed or used in connection with the construction of such work * * *."

On May 30, 1972, plaintiff, North Side, transferred possession of a J.D. 644 Loader to Glenview which was used from June until November at the construction site. In its complaint, North Side sought five months' rent at a rate of $1,800 per month and $583.84 for labor, materials, service and parts used to repair and maintain the loader. Relief was sought against defendant, St. Paul, since Glenview had not made any payments to plaintiff and was unable to pay its bills. Defendant, St. Paul, asserted five affirmative defenses, two of which alleged that the machinery was purchased rather than rented by Glenview.

At trial plaintiff established a rental rate of only $1,500 per month stating that the $1,800 rate previously claimed was an error. The testimony was in conflict as to whether the transaction was a rental or a sale. John Walline, secretary and treasurer of North Side, testified that the transfer of the loader was pursuant to a rental agreement. John Mosele, president of Glenview, testified that the agreement was to send over a demonstrator which Glenview would purchase if satisfactory but that the deal had fallen through due to a lack of financing. The trial court determined that there had been a rental agreement and that the rental rate was $1,500 per month. Further, the court determined that the bond assured the rental payments of equipment used on the job. In its appeal, defendant, St. Paul, contends that the court erred in finding a rental agreement on the facts of this case and that neither the bond nor the statute assured the payment of rent for heavy construction machinery.

OPINION

■■ While a contractor of a public improvement is required to post a bond assuring payments for materials used and labor performed in completion of the work, the contractor and its surety are free to contract with the public entity for additional liability. (*Illinois State Toll Highway Com. v. M. J. Boyle & Co.* (1962), 38 Ill. App. 2d 38, 186 N.E.2d 390.) The trial court found that the instant bond went further than required by statute and we agree. The issue, then, is whether the bond assured the rental cost of heavy construction machinery. A negative answer will obviate any need to review the trial court's finding of fact that the loader was rented, not purchased.

■■ A contract must be given a reasonable interpretation and to do so the language of the contract must be resorted to as evidence of the intention of the parties. (*Llewellyn v. Board of Education* (1926), 324 Ill. 254, 154 N.E. 889.) Sureties are not bound beyond the express terms of their undertakings (*Corn Belt Bank v. Maryland Casualty Co.* (1935), 281

Ill. App. 387), but where ambiguity exists the contracts of sureties are to be strictly construed against them. (*Illinois State Toll Highway Com. v. M. J. Boyle & Co.* (1962), 38 Ill. App. 2d 38, 186 N.E.2d 390.) However, the intention of the parties must be determined solely from the language used when no ambiguity exists. *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886.

The trial court construed the phrase "repairs on machinery, equipment, and tools" to mean that the bond assured payment not only for repairs but also assured rental payments for equipment and tools. This construction strains the ordinary use and meaning of language as the words "machinery, equipment, and tools" appear as a series of words within the same general class following the preposition "on." Each word in such a series is part of the prepositional phrase and each is limited to the same degree by the noun "repairs." Furthermore, the definitions of "machinery" and "equipment" are almost identical and they are often used interchangeably. Thus, the trial court's construction cannot be maintained as further punctuation or verbiage would be necessary to so dramatically separate the words "machinery" and "equipment" when used in such a manner.

As detailed below, an examination of the entire contract lessens whatever attractiveness the trial court's interpretation may have had when the provision was read in isolation. (*Herbert Shaffer Associates, Inc. v. First Bank of Oak Park* (1975), 30 Ill. App. 3d 647, 332 N.E.2d 703.) Here no ambiguity exists when the contract is read as a whole. Clearly, the Board wished to go beyond the statutory coverage which includes labor performed and material furnished *in the performance or execution* of the contract. This intention was expressed by including various types of operating expenses to be incurred *in connection with* the work within the scope of the terms labor and materials. The enumeration of these inclusions comprised materials and services which were necessary to keep the work moving smoothly although they might have been considered too collateral to fall within the phrase "furnishing materials for or performing labor in the prosecution of the work" had they not been expressly provided for by the contract. Specifically, the Board sought assurance that the machinery, equipment, and tools used in performing the contract would be fueled, lubricated, and serviced so as to remain operational throughout the project. This was the context in which the phrase "repairs on machinery, equipment, and tools" appeared and must be read. The trial court strictly construed a phrase, which it read in isolation, against the surety and in doing so defeated the clear intention of the parties. Therefore, the judgment of the trial court is reversed.

We hold that the bond assured the payment of charges for labor

performed and materials used in the repair of machinery, equipment, and tools used on the job but not the payment of rental fees for machinery, equipment, and tools. This case must be remanded for a determination of whether plaintiff sustained its claim for repair charges in the amount of $583.84.

Reversed and remanded.

LORENZ, P. J., and DRUCKER, J., concur.